AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| DEENA WILLIAMS, and TITUS LAMAR BELLOT | ) ) ) ) ) | Case No. 2:14-mj-01038 DNF |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 25, 2014__ in the county of __Lee__ in the __Middle District__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute Methylone, a Schedule I Controlled Substance. |
| 21 U.S.C. § 841(a)(1) | |
| 21 U.S.C. § 841(b)(1)(C) | |

This criminal complaint is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

James R. Yost, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 25, 2014

_____
*Judge's signature*

City and state: Fort Myers, Florida

Douglas N. Frazier, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Special Agent James R. Yost, being duly sworn, hereby depose and state as follows:

This affidavit is submitted in support of an application for a criminal complaint against Deena Williams and Titus Lamar Bellot for violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C), Conspiracy to Possess with Intent to Distribute a Quantity of a Mixture or Substance Containing a Detectable Amount of Methylone, a Schedule I Drug Controlled Substance.

1. I am employed as a Special Agent with United States Department of Homeland Security (DHS), Homeland Security Investigations ("HSI"). I am currently assigned to the Fort Myers Resident Agent in Charge and have been employed with DHS HSI and with its legacy agencies for over ten years. I have investigated matters involving the importation, sale, transportation, distribution, and possession of narcotics; particularly in relation to violations of Title 21, United States Code, Sections 841, 841(c), 841 (g)(1) and 952, which criminalize the importation, possession and distribution of controlled substances. I have been involved in numerous narcotics smuggling investigations during my career, which have resulted in seizures of narcotics, arrests of suspects, and subsequent prosecutions and convictions.

2. This affidavit is based upon my personal knowledge, experience, training and information obtained by me through investigative methods and conversations with other HSI agents and sworn officials from other law enforcement agencies. This affidavit does not set forth every fact resulting from the investigation; rather, it contains a summary of the investigation to date for the limited purpose of establishing probable cause to obtain a criminal complaint.

3. On April 21, 2014, United States Customs and Border Protection (CBP) officials at the John F. Kennedy International Airport International mail facility in Jamaica, New York, encountered an International Express Mail (EMS) parcel from the People's Republic of China bearing tracking number EE934616864CN. CBP selected the item for an intensive examination. CBP opened the package, discovering a large clear plastic bag wrapped in plastic bubble wrap containing a white crystal substance that later field tested positive for methylone. Methylone (3,4-Methylenedioxy-N-methylcathinone) is a Schedule I controlled substance. CBP officials seized the shipment that contained an estimated 1.007 kilograms of methylone on CBP Form 6051-S number 6567813. They notified HSI in New York and they in turn contacted HSI Fort Myers, which requested control of the evidence in support of a controlled delivery to the addressee, Deen Perkins of 177 Peerless Street, Lehigh Acres, Florida 33974.

4. Research using the CLEAR database indicates that Deen Perkins is an alias of Deena Williams who is listed as a resident at 177 Peerless Street, Lehigh Acres, Florida.

5. On April 22, 2014, HSI Fort Myers received the evidence from CBP Jamaica, New York, through Federal Express with assigned tracking number 863610561628. The contents of the shipping box were: one clear plastic bag containing methylone weighing approximately 1.007 kilograms, plastic bubble wrap and the empty original shipping bag with labels attached.

6. On April 25, 2014, under the direction and surveillance of HSI agents, the United States Postal Service made a delivery of the parcel from the People's Republic of China bearing tracking number EE934616864CN to 177 Peerless Street, Lehigh

Acres, Florida. When the Postal Service went to the front door to deliver the package, Deena Williams answered the door and accepted the package. The Postal Service then left.

7. A short time later, HSI agents received an alert that the package had been opened. Agents then approached the front door, knocked and announced their presence. When Williams opened the door and saw the agents, she spontaneously stated, "I did not know it was drugs. The package is Titus's." Agents ordered her on the ground and she complied. She continued to state that the package was not hers and that it was her brother's. When the agents entered the residence, the package wrapper was open on the couch, and the drugs were located on the kitchen counter in a plastic bag wrapped in bubble wrap which was wrapped in clear tape. The tape had been cut away from a piece of cardboard that had been attached to the bubble wrap, and some of the tape around the bubble wrap had been cut into. No one else was present in the residence when agents entered and no one had exited the residence after the package was delivered.

8. While the agents were clearing the house, agents inquired of Williams if her brother was there, and she said "no." Agents then asked her if he was coming right away for the package and she replied that she did not know. Agents asked her if he calls her, if she calls him, or does he just show up. She stated that they talk to each other by phone.

9. While agents continued to secure the house, agents handcuffed Williams and read her Miranda warnings. They asked her if she understood her rights and she stated that she did. Williams also agreed to speak to the agents without an attorney

present. She stated that her brother, Titus Bellot, contacted her a few days ago and told her that she would be receiving a package. At this time, Williams' cell phone rang and the agents showed her the number that was calling her phone. Williams stated to the agents that it was her brother calling about the package. Agents did not allow her to answer but had her text her brother telling him the package is here. After the text, Williams told the agents that her brother would not want to text and that he would want her to call. A few minutes later the agents had Williams call her brother and she told him that he needed come to the residence. This phone call was recorded. He told her that it would be about 30 minutes before he could get there.

10. While they were waiting, Williams' husband called and told Williams to make sure "he pays you." Williams identified the caller as her husband and gave his first name to the agents.

11. Williams showed the agents a series of text messages from her phone from her brother. One of the text message from April 23, 2014, from her brother stated: "Don't forget u gotta sign for the package I'll be to get later call me." Williams had texted her brother back telling him she was not going to put her "John Handcock" on it and to not to have any more packages delivered to her address. Her brother texted back stating: "LOL I wouldn't get u fucked up sis."

12. Titus Bellot showed up at residence driving a black BMW. After he entered the house, he was arrested by HSI agents.

13. During a subsequent interview after Deena Williams was given Miranda warnings again and after she signed a Miranda waiver, Williams provided additional information. She stated that Titus called her on her cell phone on Tuesday and told her

that a package was coming. She told Titus that she did not want to get in trouble for any stuff. Agents asked her what she thought was in the package, and she stated that based on the fact that she knew Titus dealt in drugs, she suspected that it was drugs. Agents asked Williams when she next had contact with Titus. Williams stated that she made contact with Titus on Thursday night when he asked her if the package had come in yet. Agents asked her again if she thought it was drugs and she reiterated that she suspected the package was drugs. Williams confirmed that when her husband called her while the agents were present, he wanted to make sure she would get money for receiving the package.

14. Williams admitted that she had opened the package that was delivered that day and had cut into the tape.

15. During the interview, Williams stated that her mother had received two packages previously for Titus Bellot.

16. Agents seized two phones possessed by Bellot. The iPhone was locked but it was confirmed by agents that this was the phone receiving the texts from and sending the texts to Williams' phone.

17. When Bellot arrived he left his wallet in the car. Agents found $770 in the wallet. There was additional cash found in the ashtray. Bellot also had $1000 on his person when he went into the residence.

Your Affiant asserts that based upon the foregoing, probable cause exists to believe that Deena Williams and Titus Lamar Bellot have committed violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C), Conspiracy to Possess with Intent to

Distribute a Quantity of a Mixture or Substance Containing a Detectable Amount of Methylone, a Schedule I Drug Controlled Substance.

FURTHER AFFIANT SAYETH NOT.

_____
James R. Yost
Special Agent
U.S. Department of Homeland Security
Homeland Security Investigations

Sworn to and subscribed before me on this 25th day of April, 2014.

_____
DOUGLAS N. FRAZIER
United States Magistrate Judge

6